The opinion of the court was delivered by
Watkins, J.
This is a suit to annul a tax sale purporting to nave been made by the sheriff and ex-offtcio tax-collector for the parish of Tangipahoa, bearing' date May 11, 1895; and the prayer of the petition is, that same be declared null and void; that the registry or inscription thereof be cancelled and erased, and the plaintiff restored to full possession of the property thereby conveyed.
The defendant’s answer is a general denial, coupled with the averment that he purchased the property in good faith, and claims ownership by virtue of a tax title which is good and sufficient in law and translative of property.
On the issue joined, a trial was had and judgment rendered in favor of the plaintiff, decreeing the nullity of the tax-sale; and decreeing that the defendant do have and recover of the plaintiff the sum of $165.90, the amount of the purchase price paid at the tax sale, with ten per cent, per annum interest thereon from the date of the tax sale, and the further sum of twenty-four dollars, taxes paid on the property for the year 1897, with like interest from January 20, 1898.
It further decreed, that the defendant be allowed to retain possession of the property until said amounts were paid.
The charges of nullity preferred against the tax title, are as follows:
*1446 1. That the assessment of the property was made “in the name of a person that did not exist, to-wit: The J. W. Athens Lumber Company, whereas in .-truth and fact the said property was owned by the W. J. Athens Lumber Company, Limited.”
2. That the assessment was not valid, because said property was not placed on the assessment roll by the proper authorities, but was added by a person not authorized, and after the rolls had been closed and filed in the office of the tax collector, etc.
3. That no notice of seizure as required by law was ever served on the W. J. Athens Lumber Company, Limited.
Plaintiff avers that said illegal tax sale operates as a cloud upon his title, as same is null and void and of no effect.
The record discloses the following facts:
That there appears upon the assessment roll for the year 1894, an assessment of the property in question against W. J. Athens Lumber Company, and that said property was sold in 1895 for the taxes of 1894 that had not been paid. That the sheriff and ex-officio tax collector claims to have given due notice of the sale for the non-payment of taxes for which it was sold. The sheriff states that he is not positive whether the notice of sale was given by postal card sent through the mails, or whether the property was advertised under ’the heading of unknown owners.
That the assessment of the parties, whose residence are unknown, is placed upon the rolls under the headings of “unknown residents”. His statement is that he thinks he notified non-residents by postal card, and that the notice was addressed to the Athens Lumber Company at Manchac, Louisiana, or Athens, Louisiana — the post office being about a mile from the plant; and that a regular publication of tax sales was made in the newspaper of the parish prior to the sale; the name of the newspaper was either the “Florida Parishes”, or the “Independent”.
Referring to the tax deed, he ascertained that it was advertised in the “Independent”.
The following is a portion of the witness’ interrogation.
“Q. — Mr. McMich'ael, as tax collector in that year, 1895, prior to the sale, did you give notice to all persons whose names appeared on the assessment roll, who had not paid their taxes, either by notice, by mail or by publication?
*1447 “A. — Yes, sir; that is, we either- mailed notices, or published them; I don’t know whether they got them or not.
“Q. — You gave notice either by mail or publication to those whose lands were sold for taxes?
“A. — Yes, sir.
“Q. — Do you know whether in May, 1895, at the time of this tax sale of the W. J. Athens Lumber Company, it was carrying on the business of their mill?
“A. — I don’t think it was.
“Q. — Mr. McMichael, isn’t it a fact that the corporation was not carrying on business in' 1895 ?
“A. — Well, I really don’t know that they were not carrying it on, Mr. Kernan. In the way of explanation, I will say I don’t remember the year, but there was a suit filed here before the tax sale by Mr. Tillison, agent for the Athens Lumber Company, and I had a considerable cost bill in the matter — in the case — and Judge Duncan was one of the attorneys, and he told me the corporation was in the hands of a receiver * * *”
“Q. — That was before this tax sale?
“A. — Yes,.sir; if I remember right. I don’t know whether I notified them by postal card, or whether it was advertised as the property of an unknown owner.
“Q. — Now, in regard to that assessment, when was that assessment placed on the roll?
“A. — When was it?
“Q. — Yes.
“A. — I couldn’t tell you.- Sometime between September and the day of sale and advertisement.
“Q. — September of what year?
“A. — 1894.
“Q. — How does the assessment appear; in pencil?
“A. — Yes, sir.
“Q. — Is the handwriting of the balance of the book (in pencil) ?
“A. — No, sir.
“Q. — Isn’t the assessment made in two different handwritings?
“A. — Well, I am satisfied I wrote the description of the property, but the name don’t look exactly like my handwriting, though I may have written it. It is right at the bottom of the page, and seems to be written in a back hand.
*1448 “Q. — The valuation was carried out'in the valuation column — isn’t it partly scratched over?
“A. — Yes, sir.
“Q. — What figures does it appear to he?
“A. — It looks like eleven thousand in one place, and nine thousand four hundred in another.
“Q. — Now, in regard to the notices you say you served: Are you positive the W. J. Athens Lumber Company was the party to whom you mailed that notice?
“A. — I am not positive that I mailed it. I either mailed it or published it án the delinquent list of unknown owners, or those whose post office addresses were not known to me. The reason that I am not positive is, because it was about the time it was.in the hands of a receiver, and I didn’t know who to send (the notices) to. I might have published it, or I might have sent it to the Athens Lumber Company.
“Q. — Is this your endorsement on the back of this check (hands check offered in evidence by plaintiff) ?
“A. — Yes, sir.
“Q. — You see the front of the check how it is drawn?
“A. — Yes, sir.
“Q. — Drawn to your order by the W. J. Athens Lumber Company, George W. Nott, Liquidator, and is dated in New Orleans?
“Á. — Yes, sir.
“Q. — Mr. McMichael, what certificate of notices that have been served appear' in your books ?
“A. — How is that ?'
“Q. — What certificate of notices appear in your books?
“A. — Those on movable property and immovable property — February 16th — that meant the last ones that went out were postal'cards.
“Q. — Is there any note in that book showing there was an assessment made after the roll had been closed?
“A. — No, sir.
“Q. — Are there any (notes) of added assessments that were made?
“A. — No, sir. You mean after I received the roll?
“Q. — Yes.
“A. — No, sir.
“Q. — You made that added assessment you speak of — you did?
“A. — Yes, sir.
“Q. — Now, do you keep a record of the notices you send out?
*1449 “A. — No. sir.
“Q.- — There is no record kept of them?
“A. — Not at that time.
“Q. — Not at that time?
“A. — No, sir.
“Q. — Now, in regard to this assessment: TJpon what assessment did you collect the taxes, do you remember?
“A. — The year?
“Q. — Yes; in what year did you collect the taxes; you charge in your deed here the different taxes paid for that year?
“A. — No, sir; I collected the nine thousand four hundred.
“Q. — What is the date of the tax deed?
“A. — May 12th, 1895. The deed is signed the 16th day of May, 1895, and it recites that the tax sale was made on May 11th, 1895.
“Q. — (Eor the taxes of) what year was tlie tax sale made?
“A. — 1894.
“Q. — You stated in your testimony that the following is a correct copy of the assessment testified to; the Athens Lumber Compány, Limited, $79.68 (description omitted) * * * with improvements valued at ten thousand dollars?
“A. — Well, it is here ten thousand in one place, but it is not on the receipt. The parish tax is ten mills — there is a ‘ten’ and an ‘eleven’ here, it looks like — I don’t know which it is — it has been rubbed out and nine thousand four hundred placed under it.”
It is admitted by counsel for both parties that the W. J. Athens Lumber Company, Limited, is a corporation declaring its domicile in the city of New Orleans; and that the charter of said corporation was never recorded in the parish of Tangipahoa. That the Athens Lumber Company. Limited, had its mill in the State of Louisiana and its office in New Orleans, where the officers of the company were domiciled.
The following is important:
“Q. — Mr. McMichael, when you were tax collector of this parish, did you know where the domicile of the Athens Lumber Company was ?
“A. — No, sir.
“Q. — You only knew (it was) carrying on a mill in this parish— running a mill?
“A. — Yes, sir.”
The tax collector’s deed was duly recorded in the conveyance office of the parish, immediately after the sale, and the defend ant-os pur *1450 chaser at the tax sale has paid the State and parish taxes since; and the receipts are produced and offered in evidence.
The evidence shows that an act of sale for the land in suit was made by William J. Athens, and Frank F. Davis, to the W. J. Athens Lumber Company, Limited, and it bears date July 5th, 1894.
A certificate was produced from the State Auditor, bearing date April 12th, 1898, to the effect that the Athens Lumber Company, Limited, does not appear upon the non-resident roll of the parish of Tangipahoa for the year 1894. The assessment roll of the property of Tangipahoa for the year 1894, on file in the clerk’s office, shows that the property claimed, in the petition was not assessed to the W. J. Athens Lumber Company, Limited, for the year 1894.
It appears that the assessment under which the sale was made is an added assessment at the foot of the roll in the tax collector’s office, and is written in pencil at the foot of the letter “A” of non-resident owners; and that the valuation is carried out in the proper column. That the handwriting is partly that of the tax collector, and partly that of some one not known to him. That the tax collector does not know when said entry was added. -There is no supplemental roll of assessment for the year 1894 in his office.
• The tax collector says: “The description of the property on the roll “ is in my handwriting; but I don’t think the name W. J. Athens “ Lumber Company, Limited, is in my handwriting; it looks as though “ some one else began the entry and I finished it.”
He states that the entry was not made by any unauthorized person; but that he “considers the assessment was made by his authority.”
He says that the assessment of this property does not appear on the tax .roll for 1894. “It was assessed under the same description as for that of the year 1893; and was omitted from the'rolls of 1894.”
He says that the property was sold under the assessment as above described, and the proceeds of the sale were turned over to the State treasurer, and the amount collected was regularly reported' to the Auditor in his quarterly report.
He further states “ever since I have been tax collector, when I have found a piece of property omitted on the assessment rolls, I have inserted it in the roll at the foot of the proper letter under which it belongs, A, B pr 0, as the case may be.”
He says that “the following is a correct copy of the assessment above testified to, ‘Athens, W. J. Lumber Company — $796.68’ (description omitted).”
*1451 Being' shown a duly certified copy of the tax deed signed by him on the 16th day of May, 1895, the tax collector identified the same as a copy of the sale made by'him to J. D. Willis, the defendant.
The tax receipts for the State and parish taxes of the years 1895 and 1896 — since the' tax sale — were issued in the name of the W. J. Athens Lumber Company, Limited — the name specified in the tax assessment and the tax sale.
. It appears from the testimony that the W. J. Athens Lumber Company was placed in charge of a receiver by a judgment of the Civil District Court for the' Parish of Orleans, on December 4, 1893, and that George W. Not-t and R. T. Athens were appointed liquidating commissioners and receivers- for said company,. and that they were duly qualified under said appointment, and took charge of the effects of the W. J. Athens Lumber Company, Limited, on January 9, 1894.
It appears that said receivers continued in office during the year 1895. The receiver testifies that he never received any notice of the sale of the property of the W. J. Athens' Lumber Company. Limited, for taxes of 1894; but he admits that he never gave any notice to the sheriff and tax collector of the parish of Tangipahoa that he had been appointed liquidator of the company.
The following is an extract from the testimony of that witness:
“Q. — Then you never received any notice of delinquency or seizure of the property for taxes?
“A. — No, sir.
“Q. — Was there any notice given to the officials in the parish of Tangipahoa that you were liquidator of that concern in 1894? '
“A. — What officials ?
“Q. — The sheriff and tax collector in Tangipahoa?
“A. — I don’t remember.
“Q. — Did you give any notice, or were they informed that the Athens Lumber Company was in liquidation and you were the receiver, that you know of?
“A. — On April 2nd, 1894, I drew a check payable to the order of P. P. McMichael, tax collector of Tangipahoa parish.
“Q — In your cheek book you find the stub of a check drawn to the order of P. P. McMichael, tax collector of Tangipahoa parish, for $239.30, and that check was signed by you as liquidator?
“A. — Yes, sir.”
*1452 In that connection, there was offered in evidence a' check dated April 2, 1894, which was drawn by the W. J. Athens Lumber Company, Limited, George W. Nott, Liquidator, on the Citizens’ Bank of Louisiana, for the sum of $239.30, to the order of P. P. McMichael, sheriff and tax collector, and endorsed “pay to the Whitney National Bank, or order P. P. McMichael”.
The object of introducing this cheek was to show that the tax collector was informed that George W. Nott was the officer having charge of the affairs of the W. J. Athens Lumber Company, Limited.
An attentive (consideration of the foregoing evidence, has satisfied our minds that the tax sale can not be sustained; but, on the contrary must be held void.
The conclusion seems to our minds irresistable, that the receipt of a check from the receiver of the W. J. Athens Lumber Company, Limited, in the spring of 1894, in the payment of its taxes for the year 1893, must have brought home knowledge to the sheriff and tax collector that he was the responsible representative of the company, though in liquidation, and he should have been notified of the claim for taxes due by the company in 1894.
Conceding that it was the duty of the tax collector as well as his right, to enter upon the foot of his rolls the description of property of unknown owners for taxation which had been omitted therefrom, yet it is evident that the entry on the roll in this instance was very irregular and inaccurate. And the proof shows that the entry upon the tax collector’s roll was made after a duplicate had been filed in the clerk’s office, and one forwarded to the Auditor.
It is impossible to sustain a tax sale under these circumstances. There was no occasion for such haste, and no justification for the irregularities 'complained of. In addition to this, the sheriff and tax collector as a witness was unable to state whether notification of the sale had been given either to non-resident tax-payers, by sending postal cards through the mails, or by putting, an advertisement in the newspaper. There is a vein of uncertainty and unreliability about the entire transaction, which stamps it as absolutely illegal and void.
We think the judge below properly disposed of the case.
Judgment affirmed.
Rehearing refused.